## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ASHLEY HOLLAR,<br><br>    Plaintiff,<br><br>vs.<br><br>WALMART, INC., and CAITO<br>FOODS, LLC,<br><br>    Defendants. | Case No.<br><br><br>**COMPLAINT**<br>*JURY DEMANDED* |

Plaintiff Ashley Hollar, by and through her attorneys of record, Jory D. Lange, Jr. of The Lange Law Firm, PLLC and Paul Zebrowski and Thomas A. Biscup of ZEBROWSKI LAW and for causes of action against Defendants above-named complains, allege, and state as follows:

### I.    PARTIES

1.    At all times relevant hereto, Plaintiff was a resident of Wayne County, Michigan.

2.    Defendant Walmart, Inc. ("Walmart") is a corporation organized and existing under the laws of the State of Arkansas. At all times relevant hereto and upon information and belief, Walmart distributes and conducts business as a retailer of food items, including pre-cut melons and melon mixes under the brand name "Freshness Guaranteed," in the State of Michigan. Walmart owns and operates the store located at 10562 Belleville Road, Van Buren Township, MI 48111.

3.     Caito Foods, LLC ("Caito Foods") is a corporation organized and existing under the laws of the State of Indiana. At all times relevant hereto and upon information and belief, Caito Foods is a manufacturer, distributor and seller of agricultural products in Michigan, including pre-cut melons and melon mixes.  Caito Foods distributes its food products, including pre-cut melons and melon mixes, to retail locations in many states, including Walmart stores in Michigan. Upon information and belief, Caito Foods' principal place of business is located at 3120 North Post Road Indianapolis, IN 46226.

## II.  JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendants each have certain minimum contacts with the State of Michigan such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

5.     Venue in the United States District Court for the Eastern District of Michigan is proper pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendants Walmart and Caito Foods were subject

to personal jurisdiction in this judicial district at the time of the commencement of the action.

### III.  FACTS

**A.     The 2018 Salmonella Outbreak Caused by Pre-Cut Melons Manufactured and Distributed by Caito Foods, LLC and Sold by Walmart**

6.      On June 8, 2018, the Centers for Disease Control and Prevention (CDC) announced that it was investigating a multi-state outbreak of *Salmonella* Adelaide linked to Pre-Cut Melon.  The agency reported that, as of June 7, 2018, 60 people were confirmed to be infected with the outbreak strain of *Salmonella* Adelaide from five states—Michigan (10), Michigan (32), Indiana (11), Illinois (6), and Ohio (1).

7.      Out of 47 people with information available, 31 (66%) have been hospitalized. No deaths have been reported at this time.

8.      Illnesses started on dates ranging from April 30, 2018, to May 28, 2018.

9.      Ill people range in age from less than 1 year to 97, with a median age of 67. Illnesses that occurred after May 20, 2018, might not yet be reported due to the time it takes between when a person becomes ill and when the illness is reported. This takes an average of 2 to 4 weeks.

10.     In its June 8, 2018 announcement, the CDC stated that Epidemiologic and preliminary traceback evidence indicates that pre-cut melon supplied by the Caito Foods, LLC of Indianapolis, Indiana is a likely source of this multistate outbreak. In

its initial interviews, the CDC noted that 25 (64%) of 39 people interviewed reported eating pre-cut melon purchased from grocery stores, including cantaloupe, watermelon, or a fruit salad mix with melon. An additional 7 people reported consuming melons but did not specify if it was pre-cut.

11.     The CDC confirmed that information collected from stores where ill people shopped indicates that Caito Foods, LLC supplied pre-cut melon to these stores.

12.     On the same day as the CDC announcement, Caito Foods, LLC issued a recall of fresh cut watermelon, honeydew melon, cantaloupe, and fresh-cut fruit medley products containing one of these melons produced at the Caito Foods facility in Indianapolis, Indiana.

13.     Recalled products were distributed to Georgia, Illinois, Indiana, Kentucky, Michigan, Michigan, North Carolina, and Ohio and were sold in clear, plastic clamshell containers at Costco, Jay C, Kroger, Payless, Owen's, Sprouts, Trader Joe's, Walgreens, Walmart, and Whole Foods/Amazon.

14.     The FDA's investigation is ongoing to determine if products went to additional stores or states.

15.     The FDA is currently working with state partners to trace back the pre-cut melons to identify the source of the pathogen, to determine the full distribution of the pre-cut melons, and to learn more about how the contamination occurred.

**B.**     *Salmonella*

16.     The term *Salmonella* refers to a group or family of bacteria that cause illness in humans.  *Salmonella* lives in the intestinal tracts of humans and other animals, including poultry. But the type of *Salmonella* that may not make poultry sick can make humans very ill.

17.     Currently, the Centers for Disease Control and Prevention (CDC) recognize two species, which are divided into six subspecies. These subspecies are divided into over 50 serogroups based on somatic (O) antigens present.

18.     The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

19.     *Salmonella* bacteria are typically transmitted to humans by food or water contaminated with feces. Such foods usually look and smell normal.  Nothing about the products look, taste, or smell would warn a consumer that it was contaminated with *Salmonella* bacteria.

20.     After exposure, *Salmonella* bacteria travel to the lumen of the small intestines, then penetrate the epithelium, multiply, and enter the blood. This infection process—also referred to as the incubation period—usually takes 6 to 72 hours for

the onset of symptoms. According to the CDC, as little as one cell of *Salmonella* bacteria can cause infection.

21.     The acute symptoms of *Salmonella* gastroenteritis (or Salmonellosis) include nausea, vomiting, diarrhea, fever, abdominal cramping and/or stomach pain, headache, dysuria, muscle pain, fatigue, and dehydration.

22.     Doctors typically treat the symptoms of Salmonellosis with anti-nausea or anti-diarrhea medications. Some physicians may prescribe antibiotics. Many severe cases may require intravenous fluids for treatment of dehydration, usually in an emergency room or urgent-care setting.

23.     *Salmonella* infections may also cause long-term side-effects, such as Reactive Arthritis (RA), Septicemia, Bacteremia, chronic gallbladder infection, and Irritable Bowel Syndrome (IBS) can develop, requiring extensive ongoing medical treatment and care.  The elderly, infants, and those with compromised immune systems are more likely to experience severe illness and long-term complications from exposure to *Salmonella* bacteria.  *Salmonella* infections can be fatal.

**C.     Ashley Hollar's *Salmonella* Infection Following Her Exposure to *Salmonella*-Contaminated Pre-Cut Melon Manufactured and Distributed by Caito Foods, LLC and Sold by Walmart**

24.     On two occasions, on or about May 14, 2018 and May 28, 2018, Ashley Hollar purchased containers of Freshness Guaranteed brand pre-cut watermelon chunks packed in its own juice from Walmart in Van Buren Township, Michigan.

6

The container's label stated that the product was distributed by Wal-Mart Stores, Inc. in Bentonville, Arkansas, 72716.

25.    Ashley consumed the pre-cut watermelon on multiple occasions.

26.    Ashley became sick from the first package of watermelon chunks on or about May 25, 2018, when she awoke in the middle of the night with severe abdominal pain and diarrhea.

27.    Later that day her abdominal pain was so severe that she sought medical attention. She was treated with antibiotics.

28.    On May 29, 2018, her local health department informed her that she was diagnosed with Salmonella.

29.    On or about June 5, 2018, Ashley became sick a second time. She again went to see her physician, where again she was prescribed a second round of antibiotics.

30.    Ashley continues to recover and faces uncertain future medical complications.

## IV.  CAUSES OF ACTION

### COUNT I
### STRICT PRODUCT LIABILITY

31.    Defendants manufactured, distributed, and sold the adulterated food that injured Plaintiff.

32.    Defendants manufactured food products, and, in particular, pre-cut watermelon for sale to the public.

33.    Watermelon that is contaminated with *Salmonella* is unsafe and thus defective when used in a reasonably foreseeable manner—*i.e.,* eating it.

34.    *Salmonella*-contaminated watermelon is unfit for human consumption, and unreasonably dangerous to an extent beyond that contemplated by the ordinary consumer.

35.    The pre-cut watermelon that Plaintiff purchased and consumed from the defendants was contaminated with *Salmonella* and was therefore, as a result, defective and unreasonably dangerous.

36.    The watermelon Plaintiff purchased and consumed was contaminated with *Salmonella* when it left Defendants' control.

37.    Plaintiff's consumption of the contaminated pre-cut watermelon caused them to become infected with *Salmonella* and suffer injury, as a direct and proximate result.

38.    Defendants are strictly liable to Plaintiff for the harm proximately caused by the manufacture, distribution, and sale of an unsafe and defective watermelon products.

## COUNT II
## BREACH OF WARRANTY

39.    By offering watermelon for sale to the general public, Defendants impliedly warranted that such watermelon was safe to eat, that it was not adulterated with a

deadly pathogen, and that the watermelon had been safely prepared under sanitary conditions.

40.     Defendants breached the implied warranties with regard to the food and drink they manufactured, distributed, and sold to Plaintiff.

41.     Plaintiff's injuries proximately and directly resulted from Defendants' breach of implied warranties,   and   Plaintiff is thus entitled   to   recover for   all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

**COUNT III**
**NEGLIGENCE PER SE**

42.     Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including, but not limited to, the requirements of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq.*

43.     Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, production, distribution, and/or sale of food adulterated with *Salmonella*, a deadly pathogen.

44.     As a direct and proximate result of conduct by the Defendants that was negligent *per se*, Plaintiff sustained injuries and damages.

## COUNT IV
## NEGLIGENCE

45.   Defendants designed, manufactured, distributed, and sold food products, including specifically pre-cut watermelon, that were contaminated with *Salmonella,* a deadly pathogen.  The watermelon, as a result of contamination, were unfit for human consumption, thus defective, and were not reasonably safe as designed, constructed, manufactured, distributed, and sold.

46.   Defendants owed a duty to all persons who consumed their products to manufacture, distribute, and sell watermelon that were safe to eat, that were not adulterated with deadly pathogens, like *Salmonella*, and that were not in violation of applicable food and safety regulations.

47.   Defendants owed a duty to all persons who consumed their products a duty to maintain their premises in a sanitary and safe condition so that the watermelon they manufactured, distributed, and sold would not be contaminated with a deadly pathogen, like *Salmonella.*

48.   Defendants breached the duties owed to their customers by committing the following acts and omissions of negligence:

   a. Failed to adequately maintain or monitor the sanitary conditions of their products, premises, and employees;

   b. Failed to properly operate their facilities in a safe, clean, and sanitary manner;

10

c. Failed to apply their food safety policies and procedures to ensure the safety and sanitary conditions of their food products, premises, and employees;

d. Failed to prevent the transmission of *Salmonella* to consumers of their watermelon;

e. Failed to properly train their employees and agents how to prevent the transmission of *Salmonella* on their premises, or in their food products;

f. Failed to properly supervise their employees and agents to prevent the transmission of *Salmonella* on their premises, or in their food products.

49.    Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of their food products.

50.    Defendants owed a    duty    to    Plaintiff to use reasonable care in the manufacture, distribution, and sale of their food products, to prevent contamination with *Salmonella*.  Defendants breached this duty.

51.    Plaintiff's injuries proximately and directly resulted from Defendants' negligence.

## V.  DAMAGES

52.    As the direct and proximate result of Defendants' acts and omissions, Plaintiff suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

## VI.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays as follows:

1) That the court award Plaintiff judgment against Defendants for damages in an amount in excess of $75,000.

2) That the court additional award all such other sums as shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of the acts and omissions of Defendants;

3) That the court award Plaintiff her costs, disbursements, and reasonable attorneys' fees incurred;

4) That the court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

5) That the court award such other and further relief as it deems necessary and proper in the circumstances.

## VII. <u>JURY TRIAL DEMAND</u>

Plaintiff demand trial by jury on all issues raised herein.

Dated:  June 12, 2018.

Respectfully submitted,


  *s/Jory D. Lange, Jr.*

Jory D. Lange, Jr.
(Application Forthcoming)
THE LANGE LAW FIRM PLLC
3131 Eastside Street, Suite 440
Houston, TX 77098
Telephone: 833.330.3663
Email: jory@jorylange.com
MakeFoodSafe.com


  *s/Paul Zebrowski*
  *s/Thomas A. Biscup*

Paul Zebrowski (Mich. Bar No. P44427)
Thomas Biscup (Mich. Bar No. P40380)
ZEBROWSKI LAW
45952 Schoenherr
Shelby Township, MI 48315
Telephone: 586.566.7266
Email: Paul@ZebrowskiLaw.com
           Tom@ZebrowskiLaw.com
ZebrowskiLaw.com

**ATTORNEYS FOR PLAINTIFF**